**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ERIC ANILES,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Cause No. EP-25-CV-10-LS** |
| | § | |
| **CHARISMA EDGE,[1] Warden,** | § | |
| **Respondent.** | § | |

**ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING PETITIONER'S PETITION**

Respondent Warden Charisma Edge moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Mot. Summ. J., ECF No. 7. Her unopposed motion is granted—and Petitioner Eric Aniles' *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241 is denied—for the following reasons.

**BACKGROUND**

Aniles is a 45-year-old inmate who was confined at the La Tuna Federal Correctional Institution in Anthony, Texas, which is within the jurisdiction of this Court, when he filed his petition. *See* Federal Bureau of Prisons (BOP), Find an Inmate, www.bop.gov/inmateloc (search for Reg. 31609-051, last visited Dec. 29, 2025). He is now in prerelease custody under the supervision of the BOP's San Antonio Residential Reentry Management Field Office. *Id.* His projected release date is July 5, 2029. *Id*.

Aniles pled guilty, pursuant to a plea agreement, to conspiracy to distribute and possess

[1] A petitioner seeking a writ of habeas corpus is required to name his custodian as the respondent. 28 U.S.C. § 2242; *Rumsfeld v. Padilla*, 542 U.S. 426, 434-42 (2004). Petitioner previously named Warden Sandra Hijar. However, on January 26, 2025, Warden Charisma Edge became the Warden at FCI La Tuna. Therefore, in accordance with Rule 25(d), Federal Rules of Civil Procedure, Warden Edge is hereby automatically substituted as the Respondent.

with intent to distribute more than one kilogram of heroin and 500 grams of cocaine, in violation of 21 U.S.C. § 846, and possession with intent to distribute more than one kilogram of heroin and 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A)(i) and 841 (b)(1)(B)(II)(ii). *See United States v. Aniles*, 1:17-cr-00362-GPG (D. Colo.), Plea Agreement, ECF No. 116. He was sentenced, consistent with a stipulation in the plea agreement, to 240 months imprisonment. *Id*., Information, ECF No. 83; *id*., J. Crim. Case, ECF No. 143. His sentence was later reduced to 180 months imprisonment. *Id*., Order, ECF No. 222.

Aniles now claims Warden Edge has intentionally misapplied and denied him relief under the First Step Act (FSA) and the Second Chance Act (SCA). Pet'r's Pet., ECF No. 1 at 1–2. He asserts the BOP has improperly calculated his FSA Earned Time Credits (ETCs) under 18 U.S.C. § 3624(g)(2) and his SCA release date under 18 U.S.C. § 3624(c). *Id*. at. 1. He claims his prerelease custody placement in a residential reentry center (RRC) or home confinement (HC) should have occurred on March 24, 2025, and his release from custody should have taken place on September 24, 2025. *Id*. at 2. He asks the Court to order Edge "to properly apply the First Step Act and Second Chance Act, and release [him] on the lawful date." *Id.* at 4.

Edge moves for summary judgment for three reasons. Mot. Summ. J., ECF No. 7. First, she claims Aniles has not exhausted his available administrative remedies. *Id*. at 3–5. Second, she maintains Aniles has no statutory or constitutional right to placement in an RRC or HC or early release—and prerelease custody placement is a designation decision within the discretion of the BOP, not the Court. *Id*. at 5–11. Finally, she argues Aniles' claim fails on its merits because the BOP has accurately calculated and applied his time credits. *Id*. at 11–15.

## STANDARD OF REVIEW

A prisoner's "[c]hallenges to the validity of any confinement or to particulars affecting its

duration are the province of habeas corpus." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). A prisoner may attack "the manner in which his sentence is carried out or the prison authorities' determination of its duration" through a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). To prevail, a prisoner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

A motion for summary judgment under Federal Rule of Civil Procedure 56 is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

## ANALYSIS

### A. Exhaustion

Aniles' petition is silent as to whether he attempted to exhaust his administrative remedies. *See generally* Pet'r's Pet., ECF No. 1. Aniles' BOP records establish that he has only submitted one administrative remedy request during his imprisonment. *See* Mot. Summ. J., Ex. 1 (Decl. of Johnna Burrows), ECF No. 7-2 at ¶ 10. His single request was related to a compassionate release denial exhausted on June 14, 2022. *Id.* and Attach. 2 (Administrative Remedy Generalized Retrieval for Petitioner).

"[A] federal prisoner filing a § 2241 petition must first pursue all available administrative remedies." *Fillingham v. United States*, 867 F.3d 531, 535 (5th Cir. 2017). Indeed, a federal court

does "not have jurisdiction over grievances related to [the] computation of sentences and sentencing credit until exhaustion of administrative review by the Bureau of Prisons." *Falcetta v. United States*, No. 20-50247, 2021 WL 5766571, at *1 (5th Cir. Dec. 3, 2021) (emphasis added) (citing *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992); *United States v. Wilson*, 503 U.S. 329, 335–36 (1992)).

There are limited exceptions to the exhaustion requirement.

> Traditional circumstances in which courts have excused a claimant's failure to exhaust administrative remedies include situations in which (1) the unexhausted administrative remedy would be plainly inadequate, (2) the claimant has made a constitutional challenge that would remain standing after exhaustion of the administrative remedy, (3) the adequacy of the administrative remedy is essentially coextensive with the merits of the claim (e.g., the claimant contends that the administrative process itself is unlawful), and (4) exhaustion of administrative remedies would be futile because the administrative agency will clearly reject the claim.

*Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 477 (5th Cir. 1997). But such exceptions apply only in "extraordinary circumstances," and the petitioner bears the burden of demonstrating such circumstances. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)

A federal prisoner must use the BOP's multi-tiered administrative remedy program to "seek formal review of an issue relating to any aspect of [his] confinement." 28 C.F.R. § 542.10(a). Initially, he must attempt to informally resolve the complaint with the staff with Form BP-8. *Id.* § 542.13(a). If his informal attempts are unsuccessful, he must submit a written complaint to his warden on Form BP-9. *Id.* § 542.14. If he is not satisfied with the warden's response, he may appeal to his regional director on Form BP-10. *Id.* § 542.15. If still not satisfied, he may appeal to the "General Counsel" using Form BP-11. *Id.*

Aniles does not dispute that he has not exhausted his claims and does not contend that the BOP grievance procedure was unavailable to him. He also does not suggest "extraordinary

circumstances" excuse his failure to exhaust.

Consequently, the Court finds there is no dispute that Aniles has failed to (1) exhaust his administrative remedies or (2) meet his burden of demonstrating an entitlement to an exception to the exhaustion requirement. The Court accordingly finds that it lacks statutory or constitutional authority to adjudicate his dispute with the BOP. It notes that dismissal on this basis alone is warranted. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies). But even if Aniles had properly exhausted, the Court would still deny the § 2241 habeas relief he seeks.

**B. Placement**

Aniles claims that he should have been placed in prerelease custody in an RRC or HC on March 24, 2025. Pet'r's Pet., ECF No. 1 at 2. He asks that the Court order Edge "to properly apply the First Step Act and Second Chance Act" and immediately release him—presumably to pre-release custody. *Id.* at 4.

A federal prisoner does not have "a constitutional right to be housed in a particular place or any constitutional right to early release." *Cheek v. Warden of Fed. Med. Ctr*., 835 F. App'x 737, 740 (5th Cir. 2020). A federal prisoner's place of confinement is solely within the discretion of the BOP. *Moore v. United States Att'y Gen*., 473 F.2d 1375, 1376 (5th Cir. 1973).

"The term 'imprisonment' refers to any type of custody, including [pre-release] custody in a [community] correctional facility or home confinement program." *Moresco v. United States*, 982 F.2d 529 (10th Cir. 1992) (citing 18 U.S.C. § 3624(c)); *United States v. Jalili*, 925 F.2d 889, 894 (6th Cir. 1991); *United States v. Dragna*, 746 F.2d 457, 458 (9th Cir. 1984); *but see Mihailovich v. Berkebile*, No. 3:06-CV-1603-N, 2007 WL 942091, at *7 (N.D. Tex. Mar. 28, 2007) ("Although [18 U.S.C. § 3621(b)] the statute does not define 'penal or correctional facility,' no one disputes

that an RRC or halfway house qualifies. Conversely, home confinement would certainly not qualify."). Consequently, 18 U.S.C. § 3621(b) gives primary authority to the executive branch over any petition pertaining to a prisoner's place of confinement. *See Jalili*, 925 F.2d at 892; *Dragna*, 746 F.2d at 458. So, the BOP—not the courts—has the statutory authority to "designate the place of a prisoner's imprisonment." 18 U.S.C. § 3621(b); *see also United States v. Chaney*, 823 F. App'x 278, 279 (5th Cir. 2020) (per curiam) ("The [BOP] has the sole authority to designate a prisoner's place of incarceration.") (citing § 3621(b)); *United States v. Voda*, 994 F.2d 149, 151–52 (5th Cir. 1993)). And the BOP's "designation of a place of imprisonment … is not reviewable by any court." 18 U.S.C. § 3621(b).

The Court finds it is without authority to order Aniles' placement in an RRC or HC during his prerelease custody period. *See United States v. Abdulqader*, No. 20-10891, 2021 WL 6102210, at *2 (5th Cir. Dec. 22, 2021) (per curiam) ("This court cannot directly order [prisoner] to serve out the remainder of his term in home confinement.") (citing *United States v. Sneed*, 63 F.3d 381, 388 n.6 (5th Cir. 1995)); *see also Prows v. Federal Bureau of Prisons*, 981 F.2d 466, 469 (10th Cir.1992) ("Nothing in § 3624(c) indicates any intention to encroach upon the Bureau's authority to decide where the prisoner may be confined during the pre-release period.").

Furthermore, Aniles was transferred to prerelease custody under the supervision of the BOP's San Antonio Residential Reentry Management Field Office on or about October 9, 2025. *See* Federal Bureau of Prisons (BOP), Find an Inmate, www.bop.gov/inmateloc (search for Reg. 31609-051, last visited Dec. 29, 2025). Hence, Aniles has received the transfer he sought on this claim. As there is no longer a live controversy, his claim concerning his transfer to an RRC or HC during his prerelease custody period is dismissed as moot. *Bailey v. Southerland*, 821 F.2d 277, 278-79 (5th Cir. 1987).

**C. Time Credits**

Aniles suggests the BOP has improperly calculated his ETCs under 18 U.S.C. § 3624(g)(2) and his SCA release date under 18 U.S.C. § 3624(c). Pet'r's Pet., ECF No. 1 at 1. He claims he should have been placed in pre-release custody on March 24, 2025, and released from BOP custody on September 24, 2025. *Id*. at 2.

The Sentencing Reform Act (SRA), which became effective in 1987, left the authority with the Attorney General, through the BOP, to calculate and grant credits toward a prisoner's sentence. *United States v. Wilson*, 503 U.S. 329, 331–35 (1992). The FSA adjusts the way the BOP calculates good time credits (GTCs) and increases the maximum number of days a prisoner can earn per year from 47 to 54 days. 18 U.S.C. § 3624(b)(1). It entitles a prisoner to apply those GTCs directly toward his sentence and release from BOP custody. *Id.*

The FSA also permits an eligible prisoner to accumulate earned time credits (ETCs) for participating in evidence-based recidivism reduction (EBRR) programs and productive activities (PAs). *Id*. § 3632(d). It gives a prisoner the opportunity to earn ten days of ETCs for every 30 days of successful participation in EBRR programs and PAs. *Id.* § 3632(d)(4)(A)(i). It allows a prisoner at a "minimum" or "low risk" of recidivating to earn an additional five days of ETCs if he does not increase his risk levels over two consecutive assessments. *Id*. § 3632(d)(4)(A)(ii). But a prisoner is only eligible to have the ETCs applied to his sentence after he "has earned time credits ... in an amount that is equal to the remainder of [his] imposed term of imprisonment." *Id*. § 3624(g)(1)(A).

The BOP has the discretion to apply ETCs toward a prisoner's prerelease community-based placement in an RRC or HC. *Id*. § 3624(g)(2); 28 C.F.R. § 523.44(b)–(c). The BOP's placement is "subject to bed availability, the prisoner's security designation, the prisoner's programmatic

needs, the prisoner's mental and medical health needs, any request made by the prisoner related to faith-based needs, recommendations of the sentencing court, and other security concerns." *Id.* § 3621(b). The BOP also has the discretion to apply up to 365 ETCs or twelve months toward a prisoner's early release to supervision. 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d).

The SCA applies to inmates regardless of whether they have earned and are eligible to apply ETCs and permits the BOP to place a prisoner in an RRC for up to twelve months. 18 U.S.C. § 3624(c)(1). It also allows the BOP to place a prisoner in HC for the shorter of (1) ten percent of the term of imprisonment of that prisoner, or (2) six months. *Id.* § 3624(c)(2). It requires the BOP to make placement decisions on an individual basis consistent with the criteria set forth in 18 U.S.C. § 3621(b).

Aniles was sentenced on October 8, 2018. Mot. Summ. J., Ex. 2, Attach. 1 (Public Information Inmate Data), ECF No. 7-6. His sentence commenced on November 8, 2018. *Id.* He was projected to receive 810 GTCs during his term of imprisonment. *Id.* He became eligible to accumulate ETCs beginning on December 21, 2018. *Id.,* Ex. 2, Attach. 3 (FSA Time Credit Assessment), ECF No. 7-8. By February 9, 2025, Aniles had earned a total of 1080 ETCs. *Id.* In accordance with BOP policy, 365 ETCs were applied toward his early transfer to supervised release. *Id*. With the application of Aniles' ETCs, his release date was changed from July 5, 2030, to July 5, 2029. *Id*., Attach. 1 (Public Information Inmate Data), ECF No. 7-6.

Assuming Aniles continues to accrue ETCs, he will earn an additional 285 ETCs during the remaining term of his imprisonment. *Id*., Ex. 2 (Decl. of Bertha Tovar), ECF No. 7-5 at 6. This will give Aniles 1000 ETCs which may be applied toward his prerelease custody. *Id.*

These ETCs made Aniles eligible to transition to a residential reentry facility on October 9, 2026. *Id.* "The SCA Conditional Placement Days subtracted from the FSA Conditional

Placement Date result[ed] in [Aniles'] Conditional Transition to Community Date of October 9, 2025." *Id.* Consequently, Aniles was placed in prerelease custody under the supervision of the BOP's San Antonio Residential Reentry Management Field Office on or about October 9, 2025, and his projected release date was established as July 5, 2029.

After reviewing Aniles' record, Bertha Tovar, a case management coordinator with the BOP, concluded that Aniles "was scored accurately, and his FSA Time Credits have been accruing and applied correctly." *Id.* at 7.

Aniles did not respond to Warden Edge's motion for summary judgment and ostensibly does not dispute the BOP's calculations concerning his sentence and release date.

**CONCLUSIONS AND ORDERS**

The Court concludes that Aniles has failed to (1) exhaust his administrative remedies, (2) show an entitlement to RRC or HC placement enforceable by the Court, or (3) establish that the BOP erred when it calculated his time credits and release date. The Court further concludes that there is no genuine issue as to any material fact and that Aniles cannot meet his burden of showing that he is in custody in violation of the Constitution or laws or treaties of the United States. The Court further concludes that the Warden Edge is, therefore, entitled to judgment as a matter of law and it should grant her motion to for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court, therefore, enters the following orders:

**IT IS ORDERED** that Respondent Warden Charisma Edge's "Motion for Summary Judgment" (ECF No. 7) is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner Eric Aniles' "Petition for Writ of Habeas Corpus" under 28 U.S.C. § 2241 (ECF No. 1) is **DENIED** and his cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**SIGNED** this 29th day of December 2025.

**LEON SCHYDLOWER**
**UNITED STATES DISTRICT JUDGE**